As this Court has repeatedly held, on remand the District Court is allowed to decide anything that is not foreclosed by the mandate. The lower court is limited only when the limitation is clear in the remand order. There is no such limitation in the remand order in this case, let alone a clear limitation. A purpose for remand was stated in that the panel had found that a mistake was made in the guideline calculation specifically with the base offense level and so sent it back. But as this Court has held in Matthews, which is an en banc case, and in numerous other cases, that the default rule, the general assumption, is that when it's remanded for resentencing, it's resentencing, it's a de novo sentencing hearing. And that's what the District Court has decided. Yes, please. Is there the summary of schedules in Klassy's bankruptcy filings shows 678,457 as the total amount of his unsecured claims. Is there any evidence your client could produce that the total amount of unsecured claims would be any less than that? Well, there is at this point lots of evidence because the bankruptcy proceedings are now finally closed. But the schedules themselves are filed at a very early time in bankruptcy. They were filed years and years before the bankruptcy was final in Mr. Klassy's case, and they are an estimate of both debt and assets at the time. And as we pointed out, on the very superficial level, there are a lot of things that were filed at such an early time. The government has asserted, I'd like to back up for just a second and point out that this was never litigated. The District Court never made a finding on this basis of loss. The government argued that the loss was calculated, and its only calculation it ever gave is that it was calculated based on the assets concealed, which is where the insurance proceeds become relevant. That it was based on that. We have now shown that that was a mistake, a critical mistake that resulted in two additional levels of loss. The government only now is coming up with this theory of, well, there's an alternative basis, but it's not given us any calculation for that. It has never been fully litigated. It's a different number than the one the government claims the District Court relied on when he initially sentenced Mr. Klassy. The original sentencing, there was a pre-sentence report. Yes. I take it. And it determined that the amount of loss or gave the amount of loss both through the total amount of assets Mr. Klassy concealed or as the amount of unsecured debt he sought to discharge in his bankruptcy. Yes. There's one paragraph, and it does say those in conclusory statements. Well, and was that challenged? Yes, absolutely. That was the big issue at the original sentencing hearing. And the outcome was? The outcome of the challenge. Was that the District Court took into consideration all your arguments, correct, and made a determination on the amount of loss. Well. I mean, didn't he, I mean, because what was questioned, the reason for the remand was because the Circuit Court affirmed on every other matter that was presented in the first appeal and sent it back for the limited purpose, it appears, to correct that baseline level. There's some language that the Circuit used, possibly gives an opening to say that anything else could be reconsidered. It's at that point, if I'm correct, then as it goes back to resentencing, that the defendant wants to reopen the amount of loss again. Is that correct? Yes. All right. And specifically address the $49,000 of the total assets concealed that the defendant argued would lower his loss. Is that correct? Yes. All right. But there was still the unsecured debt that was assessed that he sought to discharge in his bankruptcy, which was, would have caused more than $400,000 in losses. So isn't the District Court entitled to, it seems like the case law gives the District Court a lot of latitude to determine the amount of loss. So isn't the District Court entitled to rely or look at that amount as well? Yes, although it can't just be conclusionary. Loss is very flexible, and I agree it doesn't have to be done with precision. But there has to be some basis for it. But that didn't happen on remand. Nothing happened. There was no discussion about that. But that was done at the first sentencing. And we challenged that on appeal, and the panel did not reach that issue because it found that on the record before it, at that point, that the $414,000 based on the concealed assets was supported by the record, specifically the one statement in the trustee's declaration. The panel never reached that issue. And, moreover, it was raised for the first time by the government on that appeal. It didn't reach that issue specifically, but it just said everything else, there was some broad statement that the circuit made that said everything else was affirmed. Well, it, correct? Not exactly. Tell me. I want to understand. This is your time. What the district court did was it, I mean, what the panel said is, okay, here are your issues. We agree with the base offense level. We find that the one statement in the trustee's statement on loss was enough. It wasn't clear error for the district court to rely on that statement in the trustee's report on loss. We disagree with your argument about the other two issues, the number of people he supervised, the role enhancement. And so then it said it's reversed in part, affirmed on part, and remanded. All right. It was the only loss that had discussed at all was that loss about concealed assets. There isn't a single word in that panel's opinion that discusses whether the debt sought to be discharged. And that's important for a number of reasons. First, it was not litigated the first time around. Second, there was only a number given with no calculation. The district court couldn't rely on that. And the numbers given by probation, which is what the district court purported to rely on, is $135,000 different than the number given by the government, who never even raised the number until appeal. It has never been litigated. And as we have shown, that just on its face, it clearly is inaccurate if you just pull it off of the bankruptcy, which the government never even produced. But if you pull it off from the bankruptcy schedules, which you've seen Judge Nelson because I produced it, not because the government ever has. The government has never produced a single piece of evidence to support a theory. And finally, without leaving me just a few seconds for my rebuttal, finally, in order for the district court to use debt discharged, it would have to make a finding based on evidence in the record that that was appropriate in this case. This Court has said that you can sometimes use amount of debt sought to be discharged in a bankruptcy fraud case. But you can't always use it because loss, of course, has to be attributable to criminal action. And so in the cases where this Court has allowed that theory, it's because there have been specific findings that the entire bankruptcy was fraudulent. Even by the government's own theory, without fraud, Classy's debt exceeded his assets, and he could have lawfully declared bankruptcy. And for all of those reasons, it simply is not right to say that the district court has ever made a finding. It's never even had any evidence before to support the real number of what the debt the debt sought to be discharged is. Ginsburg. Counsel, let me just ask. Are you saying you didn't have the opportunity for you to produce evidence that that figure was wrong? It's the government's burden. And, yes, the attorneys could the government at the first hearing where this was all litigated, this issue wasn't litigated because the government had never raised it. The government raised debt sought to be discharged for the first time on the last appeal. It was never before the district court. When they did try to put it before the district court on remand, they produced no evidence of that. They have still produced no evidence, even though I've been complaining since the first appeal, that if you want to use that theory, you've got to produce some way you calculated that number, since your number is even different than probation, who also gave no way of calculating it. Thank you. I understand your response. Good morning, Your Honors, and may it please the Court. I'm Christopher Hales representing the government. Louder? Thank you. I want to address a couple issues. First, the history of how this number was addressed in the first sentencing. There's a difficulty here in that the debt to be discharged wasn't an issue even presented in the opening brief by the defendant. And so some of the contentions about what happened earlier in the case, the government has not had an opportunity to address in its briefing. The first issue is that the pre-sentence report at paragraphs 16 and 17 cited $539,000 as the amount of debt to be discharged. And it didn't just allege a number. It also referenced the bankruptcy court docket number and made specific comments about the number of unsecured creditors who were listed in that petition, which reflected that the probation officer had indeed reviewed the filings. At the first sentencing, the defendant never objected to that $539,000 figure. In excerpts of record, page 75 at line 12, you see that the government's discussion of the assets concealed is styled as the government's response to defendant's objections. And that is because the defendant's objections at that first sentencing, and this is in the district court docket number 126 at pages 2 and 3, it noted both of the different grounds upon which the probation report had recommended a loss amount, but then proceeded only to object to the amount of the assets that were concealed, the $414,000. There was no alternative evidence presented about whether the defendant had indeed sought to discharge less, a lower amount of debt. And at no time, as this case has gone up and come back down and gone up again, has the defendant presented any evidence that the amount of debt to be discharged in a bankruptcy as it was filed in 2003 was anything less than $539,000. Judge Nelson, as you noted, the government's number that argued on appeal, the $678,000 is derived from what was excerpts of record 1804 in the previous appeal, and that was from the summary of schedules. And the government on appeal did believe that the amount of debt sought to be discharged should have been higher, and so used that amount in the appeal. But the fact remains that at no point in the procedures in this case has the defendant suggested that there was a lower amount of debt sought to be discharged in that bankruptcy. I'd like to move on to a couple other issues, and just briefly, one is to note that the Court noted that it had discretion to reopen this issue at the resentencing, and that's at excerpts of record 11, lines 12 to 17. It said, isn't there a difference, though, from preventing it from being re-litigated and requiring that it be re-litigated? It's discretion of the Court to determine whether or not it needs to be re-litigated. So the Court recognized it had discretion, and the government agreed. The record also reflects that the Court exercised its discretion. It said that even assuming everything was opened up again for the Court to consider, the most it would do would come back to an offense level of 32, which if you look at the helpful table of the sentencing determination and defendant's opening brief at page 5, you'll see to get to that number, the Court necessarily had to find a loss amount that would result in a 14-level increase. And so in doing that, the Court was saying that it would not find that the loss amount would have changed. There are other indicators in the record in the resentencing transcript that the Court had thought about this and exercised its discretion. One is that it had read the sentencing memoranda, its comments about the extent of the defendant's conduct in this case and the fact that he had used shell corporations to conceal his assets in the bankruptcy, and the general comments about how long the district court had spent thinking about this case in advance of the resentencing. As to whether the Court properly exercised its discretion in reopening this loss amount at the resentencing, looking at the Bustle case that's discussed in the parties' filings, that case essentially talks about two different scenarios. One is the run-of-the-mill case where a bankruptcy fraud defendant acts alone and fails to disclose a single asset, and contrasts that with a lengthy orchestrated scheme in which the defendant acts with co-conspirators and uses shell corporations to create the appearance of having fewer assets and income. And there is already a substantial amount of evidence and issues that are now uncontested in the record to show that this case is much more like the lengthy orchestrated scheme. One is the sophisticated means enhancement recommended in paragraph 51 of the PSR, which is not contested here and was based in part on the use of shell corporations and the concealment of assets. The second is the managerial role. As this Court found the first time, Classy indisputably supervised numerous people in the commission of his crimes and received a two-level adjustment for that. So, again, in Bustle we're moving to the acting with co-conspirators. And this Court has already determined that the unsecured creditors were indeed victims of this crime, all of them, and that is not challenged here on this appeal either. In addition, there are the Court's comments about the severity of the conduct in this case that the defendant defied the direct instructions of attorney on what to do when it came to filing of the bankruptcy, and he filed and bought different corporations to try and hide assets. There are the comments of the bankruptcy trustee that Mr. Classy's deception was as complex a bankruptcy crime as he had ever seen during his career as an FBI agent and a trustee. And then there's also evidence about the reasons for filing bankruptcy, and the Court at resentencing summed it up by essentially by saying that the bankruptcy court was used as a pawn in the defendant's bankruptcy fraud scheme. And with all of that, with those findings from the district court and the various sentencing factors that are not challenged here and have already been upheld, it's clear from the record that the district court did not abuse its discretion in declining to reopen the issue of loss. I see that I'm running short on time. Do Your Honors have any questions before I conclude? This was appealed previously and then was remanded. Yes. There were different issues that were raised on that appeal, but ultimately the circuit remanded to correct this base offense level? Yes. Was there anything else notable in the circuit language of its decision that would bear on either the first or second issue raised by the defendant? The loss amount finding by the district court was upheld, and I think that is the most notable issue for our purposes here, Your Honor. Thank you. Thank you. It was upheld specifically on the record before the court. That record before the court was indisputably mistaken. The government has spent a lot of time talking about what evidence the defendant did or didn't produce. It's turning sentencing on its head. It is the government's burden. And the government has produced nothing more than a number. And certainly the district court has not embraced that number. How could it embrace a number it doesn't know how it's calculated that's different than the other number it was previously given? Can I ask you to calm down a little bit? Was there any objection at the first sentencing to the loss amount? I mean, it looks like that was appealed. There was a number on a paragraph dealing with the loss amount, correct? Yes. And it was objected to hotly, yes. Right. And did it deal with this $49,000, or did it deal with anything regarding the unsecured amount? Was there any objections relating to either of those two? Yes. It dealt with the $49,000. Yes. I mean, that's what it's centered on, but yes. And it was appealed and the circuit affirmed? The circuit found that on the record before it, the statement that it's my understanding that check was an addition. Was there any challenge to the other basis that's being looked at now, which is the amount of unsecured debt? Yes. The government didn't bring that up. At that time. I'm just asking you a question. Yes. Before the panel, yes, there was. Okay. At the time of sentencing, the defendant challenged the unsecured debt? No. Well, not specifically. It challenged that. Well, no. Okay. Thank you. I have nothing further. Do you have anything else? Nothing else. Judge Fletcher, do you have anything else? No. Well, I think this all turns on how much the, it really turns entirely on the amount that was found to be, shall we say, what the bankrupt was trying to show was that the loss was not nearly as much as it actually turned out to be in the terms of the bankruptcy judge. So it seems that there was no issue, but that the bankruptcy judge could figure out and decide what amount should be found to be, the amount that was non-dischargeable. Is that right? No judge, not the bankruptcy judge. Well, the bankruptcy judge ended up doing it in bankruptcy proceedings, but that wasn't part of the criminal proceedings. And the district court judge in the criminal proceedings did not make a finding as to that. All right. Thank you very much. Thank you for your argument.
judges: Fletcher, Nelson, Murguia